[Cite as *State v. Evans*, 2013-Ohio-1784.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-00130 |
| DARTAGNAN LEONDRE EVANS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2012-CR-0303(B)

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 29, 2013

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOHN FERRERO
BY: RONALD MARK CALDWELL      ANTHONY KAPLANIS
Stark County Prosecutor      701 Courtyard Centre
110 Central Plaza South, Ste 510      116 Cleveland Avenue N.W.
Canton, OH 44702      Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Dartagnan Lee Evans ["Evans"] appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of felonious assault. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} The charges in this case arose because of a fight between two groups of men that occurred around 3:00 a.m. on February 12, 2012, in the parking lot of the Wales Ridge apartment complex located on Wales Road in Jackson Township.

{¶3} The impetus for this fight occurred two days before the confrontation. On that day, Ryan Boylan received a phone call from an old friend and former co-worker, Jordan Wade (nicknamed "D"), asking for a ride. After getting into Boylan's car, Wade pulled a handgun and told Boylan, "Sorry, man, I've got to get you," meaning he was going to rob him. Boylan handed over the only money he had at the time, $20.00, as well as half a pack of cigarettes. Wade then got out of the car and fled on foot.

{¶4} Boylan told his roommate, Dillon Klein about this incident. Instead of reporting the crime to the police, they opted to handle the matter themselves and to get Boylan's $20.00 back from Wade. The next day, a series of phone calls occurred between Klein, Boylan and Wade. Evans is a friend of Wade. During these calls, Wade told Klein that he did not rob him, but that he had $20.00 if he wanted the money back. Klein and Boylan decided to drive to the apartment complex where Wade and Evans lived.

{¶5} On the way there, Klein and Boylan, along with another friend, Jamie Taylor, called Robert Rader. They told Taylor where they were going and for what purpose. Taylor drove to the apartment complex separately.

{¶6} When these groups arrived at the parking lot for the apartment complex, they were met with an opposing group that included Evans, Wade, Preston Wade (in a wheelchair due to a recent car accident), and Jonathon Douglas.

{¶7} Klein got out of the car alone to confront Wade. Klein told Wade that he just wanted the $20.00 that Wade had taken from him. Having observed some members of Wade's group were armed with weapons, including a baseball bat, a crowbar, and a brick, Taylor called the police.

{¶8} Klein turned away to go back to his car. As he did so, he got sucker-punched and rushed by Evans. After being knocked to the ground, Klein continued to be punched and kicked about the head by Evans. Wade then joined Evans. Klein was struck in the head with an aluminum baseball bat. Klein soon lost consciousness. A bloodied Klein was able to make it to his car, and Boylan and Rader immediately drove him to the hospital for treatment.

{¶9} The Jackson Township police arrived to find an empty parking lot. The investigation eventually led to the Klein-Boylan group due to Klein's medical treatment at the hospital. The police obtained statements from Klein, Boylan, and Rader as to what had happened.

{¶10} Detective Rowland met with Evans to talk with him about another matter. At the conclusion of that interview, the detective asked Evans if he wanted to talk to him about the fight. Evans chuckled and agreed to talk with the detective. Evans told

Rowland that the police had the wrong suspect (Jordan Wade), and that he was the person who had swung the bat and hit Klein in the head. Rowland asked Evans if he understood that he was implicating himself with a crime, and Evans responded that he did, and then agreed to give a recorded statement after waiving his rights.

{¶11} In his statement, Evans said that he hit Klein after Klein threw a punch at him that had no chance of connecting. According to Evans, Klein was too slow to fight him. While he was hitting Klein, Evans noticed that bricks were being thrown, and that one of these bricks hit his cousin, Preston Wade, knocking him out of his wheelchair. Klein got up and started towards Preston. To protect his cousin, Evans told Rowland that he picked up the dropped baseball bat and hit Klein in the head.

{¶12} Jonathon Douglas testified that their group went outside that morning in order to calm things down as the Klein-Boylan group was agitated about getting the $20.00 back. Klein got into Evans's face and swung at Evans. As a result, Evans started fighting with Klein. Douglas next saw Jamie Taylor throw a brick that hit Preston Wade, knocking him out of his wheelchair. Douglas grabbed the brick and threw it, hitting someone. Douglas also admitted that he punched someone, breaking his, Douglas', hand in the process. Douglas was next hit by a brick thrown by Taylor striking him in the eye and causing a fracture. Douglas admitted that he did not see what was occurring to Preston Wade once he himself got involved in the fight. Douglas asserted that the police never contacted him and that he never contacted the police.

{¶13} Preston Wade testified that the Klein-Boylan group was calling that night making threats. This group then showed up in their parking lot, so they went outside to confront them. Words were exchanged, and Klein then swung at Evans, causing a fight

to break out. While Evans was fighting with Klein, two people (one of whom was Jamie Taylor) came up to Preston and hit him in the face with a brick. This blow knocked him out of his wheelchair, and these two people started to hit and stomp him. Preston was eventually able to get back into his wheelchair, and observed the rest of the fight.

{¶14} On cross-examination, Preston reiterated that Taylor was the person who threw the brick at him. Preston also offered that his brother, Jordan Wade, was armed with the bat when they went outside. Preston further testified that Klein came over to him while he was on the ground after being knocked out of his wheelchair. Klein reached Preston and was on top of him. Klein was not armed with anything, and Evans pulled Klein off Preston, after which he told Preston to get back into his wheelchair.

{¶15} Evans was charged along with his co-defendant, Jordan Michael Wade, with using a baseball bat to cause serious physical harm to Dillon Klein by hitting him in the head with the bat.

{¶16} The jury, found Evans guilty of the felonious assault charge, and the trial court sentenced him to a prison term of four years.

*Assignment of Error*

{¶17} Evans raises one assignment of error:

{¶18} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S REQUEST TO CHARGE THE JURY ON THE LAW OF THE DEFENSE OF ANOTHER AS IT PERTAINED TO THE DEFENSE OF PRESTON WADE."

*Analysis*

{¶19} In this appeal, Evans challenges only the trial court's decision not to instruct the jury on the affirmative defense of defense of another. In the case at bar,

Evans specifically requested the court instruct the jury on defense of another in a deadly force situation. (2T. at 195.) Evans based his request for this instruction on the allegation that he hit Klein with the bat in order to protect his cousin, Preston Wade. In denying Evans's request for the instruction, the trial court concluded that the evidence did not establish that Klein had assaulted the wheelchair-bound Preston Wade, with or without a deadly weapon.

{¶20} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640(1990), paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. *State v. Nelson*, 36 Ohio St. 2d 79, 303 N.E.2d 865(1973), paragraph one of the syllabus, *overruled on other grounds by State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583(1982). However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135(1976); *Murphy v. Carrollton Manufacturing Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832(1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Feterle v. Huettner*, 28 Ohio St.2d 54, 275 N.E.2d 340(1971), at syllabus; *Murphy v. Carrollton Manufacturing Co.*, supra; *State v. Coleman*, 6th Dist. No. S-02-41, 2005-Ohio-318, ¶12.

**{¶21}** Defense of another is a variation of self-defense. *State v. Moss*, 10th Dist. No. 05AP–610, 2006-Ohio-1647. An actor is legally justified in using force only when the person he is aiding would have been justified in using force to defend him or herself. See *State v. Wilson*, 2nd Dist. No. 22581, 2009-Ohio-525, ¶ 38. In this respect, the defender of another person acts at his own peril; if the original person was not acting in self-defense, the defender is not allowed to employ force to protect that person. *State v. Abalos,* 6th Dist. No. L–09–1280, 2011-Ohio-3489, ¶ 14.

**{¶22}** A trial court must instruct the jury on self-defense or defense of another only when the defendant presents sufficient evidence at trial to warrant such an instruction. See *State v. Robinson*, 47 Ohio St.2d 103, 110–113, 351 N.E.2d 88 (1976). The trial court should view this evidence in the light most favorable to the defendant and determine, if the evidence is believed, whether it would permit a finding of reasonable doubt as to guilt under the legal test for self-defense or defense of another. Id. If the evidence is insufficient to raise a claim of self-defense or defense of another, then the trial court should remove those issues from the jury's considerations. Id.

**{¶23}** A claim of self-defense, or defense of another where deadly force is used, requires the defendant to show he and the other person were not at fault in creating the situation giving rise to conflict; he had a bona-fide belief he or the person he was defending was in serious danger of death or great bodily harm which could only be avoided by use of deadly force; and he and the other person did not violate a duty to retreat or avoid the danger. *State v. Williford*, 49 Ohio St.3d 247, 349, 551 N.E.2d 1279 (1990). A defendant need only provide evidence of a nature and quality sufficient to raise the defenses rather than prove the applicability of it by a preponderance of the

evidence. *State v. Robinson*, 47 Ohio St.2d 103, 351 N.E.2d 88(1976). If the defendant "fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

**{¶24}** When reviewing a court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443(1989).

**{¶25}** In the case at bar, as an alternative basis for denying his request, the trial court found that all the evidence showed Evans' use of force was greatly disproportionate to his apparent danger and the danger to Wade. Based on the testimony produced at trial, Evans was not entitled to an instruction on defense of another because not all of these elements were presented.

**{¶26}** In the case at bar, there is no evidence that Klein attacked Wade with a brick or any other weapon. Taylor is the person who attacked Wade with the brick. By his own admission, Evans attacked Klein as he, Klein, was getting up from the ground and running toward Wade. In other words, Klein was not, and had not attacked Wade at the time Evans attacked him with the baseball bat.

**{¶27}** Here, the evidence is that the force used by Evans did in fact cause serious physical harm to Klein. We cannot find error when clearly excessive force was used, even if self-defense were appropriate. By asserting the defense of self-defense, or defense of another the accused is stating, in effect, that the force he used was required to extract him from the imminent danger of death or great bodily harm with

which he was confronted by his victim. If he used more force than was necessary, such force was legally excessive and his defense fails. *State v. Short*, 10th Dist. No. 82AP-978, 1984 WL 4604, at *2.

**{¶28}** Evans admitted that he punched Klein before Wade was attacked. Klein went down and Evans admits he "kept pounding him." Evans did not see Klein with a weapon, nor did he see Klein attack Wade.

**{¶29}** Accordingly, after a careful review of the entire record in the case at bar, we find that Evans failed to present sufficient evidence to establish that he was not at fault in creating the situation giving rise to conflict, that he had a bona-fide belief he or that Wade was in serious danger of death or great bodily harm which could only be avoided by use of deadly force against Klein, and that he did not violate a duty to retreat or avoid the danger.

**{¶30}** Evans' sole assignment of error is overruled.

{¶31} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN

WSG:clw 0408

[Cite as *State v. Evans*, 2013-Ohio-1784.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DARTAGNAN LEONDRE EVANS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-00130 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN